JOHN A. AND GEORGE SCHULTZ, Respondents, *v.* PETER LINDELL, JR., *et al.*, Appellants.

1. *Lands and Land Titles—Confirmations—Surveys—Evidence.*—A confirmation under the act of Congress of June 13, 1812, to a lot, out-lot or common-field lot by virtue of inhabitation, cultivation or possession prior to the 20th December, 1803, supersedes any title under a French or Spanish concession subsequently confirmed by the act of July 4, 1836; but the surveys under the latter confirmation may be used as evidence to show the location and boundaries of the lot confirmed by the prior act.

2. *Conveyances — Description — Evidence.* — Where a particular tract of land cannot be located by the calls for monuments, or for course and distance, the intent of the parties is not to fail if there be any other matter indicative of such intent.

3. *Limitations—Exceptions—Infancy.*—By the act of limitations, R. C. 1825, p. 510, a party within the exceptions of the statute at the time the right of entry accrued, has twenty years after removal of his disability within which to bring his action, and a purchaser under an administrator's sale takes the position of the heir.

*Appeal from St. Louis Court of Common Pleas.*

This was an ejectment to recover possession of a common-field lot conceded to William Bizet, February 7, 1769, and confirmed to his legal representatives by act of Congress of July 4, 1836 (Dec. 286), and surveyed as U. S. survey No. 3,340, and being the same lot cultivated by John B. Provenchere prior to December 20, 1803, and conveyed by Mary Provenchere and John Louis Provenchere to Risdon H. Price by deed dated August 29, 1816.

The defence was a traverse of plaintiffs' title, and the statute of limitations.

At the trial, the plaintiffs gave in evidence the grant to William Bizet for 1×40 arpents, dated February 7, 1769, the confirmation, and the U. S. survey No. 3,340.

William Bizet, by will dated May 30, 1772, devised his estate to his brother Charles Bizet.

Charles Bizet married Marie Papin, January 29, 1774, and entered into a marriage contract of that date establishing the customary community between the parties, to be common in all personal property and in all after-acquired real property; and by the same contract the survivor of the community was to take a life estate in all the property left by the party first dying.

Charles Bizet died May 26, 1780, leaving his widow Marie (who subsequently married John B. Provenchere) and three children, Paul, Antoine and Marie Bizet.

Marie Bizet married Louis Boissy, September 1, 1795, and left five children; she died September 27, 1813; her husband died October 12, 1819.

Antoine Bizet married Cecile Compare, and died leaving issue, who died before their mother, and their title to the land sued for vested in the mother, and was conveyed to Peter Lindell, the defendant, by deed dated ——, 1849.

Ve. Marie married John B. Provenchere, 1st September, 1781, and the parties made a marriage contract establishing the customary community.

Testimony was given by the plaintiff to prove that John B. Provenchere cultivated this lot prior to December 20, 1803, and that the lot was confirmed by act of June 13, 1812.

John B. Provenchere and Marie Bizet had issue John Louis Provenchere and Margaret, who married Pierre Tournot dit Lajoie; she left one son, Pierre Tournot, who conveyed the *locus in quo* to Lindell on 20th June, 1854. Marie Provenchere died January 23, 1819; John *B.* died in 1814 or 1815.

Plaintiffs presented two chains of title, one under Bizet, and the other under John *B.* Provenchere.

*Under Bizet.*—Deed from Paul Bizet to John Louis Provenchere, dated August 13, 1833, conveying all his claim in the property of Charles Bizet; deed from John B. Boissy to the same, dated August 20, 1833, to the same purpose and effect; deed from John L. Provenchere to Robert Forsyth, conveying this field lot, the undivided interest, &c., dated January 15, 1838; deed from Robert Forsyth to the plaintiffs in this suit, dated March 1, 1855.

Under this title plaintiffs could only recover six fifteenths of the land.

*Title under J. B. Provenchere.*—Deed from Marie Provenchere and John Louis P. to Risdon H. Price, dated July 29, 1816—acknowledged July 31, 1816, but not recorded until May 17, 1847—by which the parties sold "their title, claim, interest and estate to a lot of $1 \times 40$ in the Big (or Grand) Prairie, about three and one half miles west of the town of St. Louis, bounded north by land now belonging to Joseph Lacroix, as it is said, and south by land cultivated formerly and said to belong to one Simoneau; it being the same tract or parcel of which the said John B. Provenchere, in his lifetime, cultivated for many consecutive years prior to 1803." They warranted the land against themselves, but not against third parties. Deed from R. H. Price to Horatio Cozens, dated May 11, 1825, but not acknowledged or recorded until August, 1846. Horatio Cozens died, and letters of administration were granted July 20, 1826. Deed from administra-

tor of H. Cozens to Fred. Jenkins, dated April 25, 1848, upon order of sale made September 22, 1847. Horatio Cozens left two children, William H. Cozens, born September 5, 1819, and a daughter, born in September, 1826, three months after her father's death. Deed from Frederick Jenkins to plaintiffs, dated December 16, 1853.

Under this title plaintiffs could claim to recover one half of the land.

The plat of township 47 N., R. 7 E., was put in evidence. This shows that the lot of Joseph (or Louis) Lacroix was four arpents north of the premises sued for, and there was no evidence of any lot cultivated or claimed by Simoneau on the south.

To show an outstanding title under John B. Provenchere, defendants read a deed from Marie Provenchere and John Louis Provenchere, dated July 25, 1816—acknowledged July 25, 1816, and recorded July 29, 1816—by which the parties, as heirs of the late John Baptiste Provenchere, did grant, bargain and sell to Sylvester Labadie and Joseph Phillipson, their heirs and assigns, a lot of land situate about 3½ miles from the town of St. Louis, at a place commonly known as the Grand Prairie, which lot contains 2 arpents in front by 40 in depth, and is bounded on the north side by a road of 36 feet which separates it from the lot which Pierre Chouteau has acquired of Alexis Marie, and on the south by lot of owner unknown, and which lot belongs to us as having been cultivated for many years by the said John Baptiste Provenchere, lately deceased, of whom we are the heirs. In this deed there was a warranty against themselves, their heirs and assigns, and all the other heirs of J. B. Provenchere.

To show the location of this lot, and that it embraced the *locus in quo*, defendant deraigned a title to himself to a common-field lot of 2×40 arpents immediately adjoining the premises sued for, on the north, under Pierre Chouteau, claiming under Alexis Marie.

22—VOL. XL.

February 27, 1806, Alexis Marie, by deed, conveyed to Pierre Chouteau a lot in Grand Prairie of 2×40, bounded north by ―― Labarge, and south by ―― Provenchere, and recited that he had made a verbal sale of the land four years previously.

March 2, 1818, Pierre Chouteau conveyed to the heirs of Vincent Bouis this 2×40 lot, as bounded north by lot formerly of F. Labarge, and south by lot formerly of John B. Provenchere, deceased.

June 1, 1825, this claim was proved before U. S. Recorder Hunt, and confirmed to A. V. Bouis' legal representatives, for 2×40, as bounded south by J. B. Provenchere, and U. S. survey No. 1,813 was made of the tract so confirmed. The title of Bouis passed to defendant in eighteen hundred and thirty-five.

The confirmation by Recorder Hunt to P. Barribeau of a lot of 1½×40 arpents, March 5, 1825, bounded north by Benito Vasquez, and south by Joseph Lacroix, was also in evidence.

Concession of a lot to William Bizet, February 7, 1769, for a lot of 2½×40 in Grand Prairie, bounded north by widow Hebert, south by widow Dodier, confirmed in 1816, and surveyed as U. S. survey 1,589.

This lot was sold to Charles Bizet by public sale, February 18, 1775, by administrator.

Defendant then showed title in himself to the New Madrid location No. 161, of Joseph Hunot, by patent in 1859, and by deeds commencing from 1818, and also to the New Madrid location of Joseph Conway; and offered evidence to prove that he, and those under whom he claims, had been in possession of these lands, which include the *locus in quo*, from A. D. 1819. Defendant personally had possession of the premises sued for since 1828.

Defendant also dereigned the title of Labadie and Phillipson to this lot, to show that he had obtained such title since suit commenced.

The title of Riviere dit Bacanné for the lot on the north of the *locus in quo*, and interfering with the Bouis or Marie lot of $2 \times 40$, was shown to have passed to defendant in the year 1828.

The testimony of F. Noise for plaintiffs, and of W. H. Cozens for defendants, showed that there was an old Spanish road between the Marie and Provenchere lots. There were other roads running through the prairie. There was no proof nor any evidence tending to prove that *J. B.* Provenchere ever cultivated the William Bizet lot of $2\frac{1}{2} \times 40$, U. States survey 1,589. The testimony of Cozens showed that there was no Spanish road ·between the William Bizet lot of $2\frac{1}{2} \times 40$ and that of widow Hebert; that Bizet lot survey 1,589 was not bounded by the lot P. Chouteau claimed under Marie, survey 3,297.

In rebuttal of defendants' evidence, plaintiffs offered in evidence:—Confirmation of a lot in Grand Prairie to Pierre Chouteau under Alexis Marie for a common-field lot of $2 \times 40$ arpents, confirmed by Recorder Bates in 1816; also, proof and confirmation by Hunt of same lot, bounded north by Ve. Chouteau, and south by lot formerly of Bequette, surveyed as U. S. survey 3,297; a mortgage by Charles Bizet, executor of William Bizet, to Gabriel Cerré, made June 7, 1776, for the lot of $2\frac{1}{2} \times 40$, bounded by Cotte and Hebert, released November 12, 1782, to J. B. Provenchere; a deed from Antoine Bizet to John *Louis* Provenchere, dated September 11, 1817, for the lot of $2\frac{1}{2} \times 40$, bounded north by Dodier, south by Hebert, and sold as land of William Bizet, 18th February, 1774.

There was no evidence showing that this lot of $2\frac{1}{2} \times 40$ of William Bizet was ever cultivated by *J. B.* Provenchere, and the evidence did not show any Spanish road upon its northern boundary.

The following rough sketch shows the connection of the Grand Prairie common-field lots as laid down on the town-

Schultz v. Lindell's Heirs.

ship plat. The two claims of Chouteau under Marie are more than a mile apart:

Survey 1262, Mad. Chouteau, 2×40.

*Survey 3297, Pierre Chouteau under Alexis Marie,* 2×40.

Survey 3298, P. Chouteau under Pierre Bequette, 1×40.

Survey 3299, P. Chouteau under Bap. Bequette, 1×40.

Survey 3300, Ve. Dodier.

Survey 1589, Wm. Bizet's L. R., 2½×40,      Ve. Dodier and Ve. Hebert.

Survey 1256, Ve. Hebert.

17½×40. Sundry lots.

Survey 1662, Benito Vasquez, 1×40.

Survey 1663, P. Barribeau. S. by Joseph Lacroix.

Survey 1664, Louis or Joseph Lacroix.

Survey 1665, Louis Laroche, 2×40.

Survey 1813, Vincent Bouis under P. Chouteau, 2×40,

S. by Provenchere. Baccanné 1×40

Sur. 3340, W. Bizet, 1 x 40.

OLD ROAD.

J. B. Provenchere, 2×40, N. by road separating lot, P. Chouteau bought of Alexis Marie.

For the plaintiffs, the court gave the following instructions, to which defendants excepted:

1. If the jury believe from the evidence that John Baptiste Provenchere, an inhabitant of the town or village of St. Louis prior to the twentieth day of December, (1803) eighteen hundred and three, claimed and cultivated or possessed the lot of land mentioned and described in the petition as a common-field lot adjoining or belonging to the town or village of St. Louis, and was the last claimant and cultivator thereof prior to that date, and that the said John Baptiste Provenchere died prior to the year (1816) eighteen hundred and sixteen, leaving a son, Jean Louis Provenchere, and a daughter, Madame Tournot dit Lajoie, or her descendants, as his only heir or heirs living at his death, and that the deeds given in evidence by the plaintiffs, to show a derivation of title to them from Mary Provenchere and Jean Louis Provenchere, are genuine, and that the lot mentioned in said deeds is the same lot which was so claimed and cultivated or possessed, as aforesaid, by said Provenchere, then the plaintiffs have shown a valid and subsisting title in them to one undivided half of so much of said lot as lies outside of the Madame Camp survey number (903) nine hundred and three by the United States, unless the same has been lost by the operation of the statute of limitations, or unless the jury also believe from the evidence that the lot described and intended to be conveyed in the deed from Marie and Jean Louis Provenchere to Phillipson and Labadie, dated the 25th day of July, (1816) eighteen hundred and sixteen, given in evidence by the defendants, was the same lot as that above herein mentioned within its true location and boundaries.

2. If the jury believe from the evidence that the deed from Marie and Jean Louis Provenchere to Risdon H. Price, dated July 29, 1816, describes the land sued for, and that the deed from Marie and John Louis Provenchere to Phillipson and Labadie, dated July 25, 1816, describes another and a different tract of land, and does not include the land sued

for, the jury will disregard the said deed to Phillipson and Labadie.

3. If the jury believe, from the evidence, that Horatio Cozens, through whom the plaintiffs claim title, died prior to the twentieth day of July, (1826) eighteen hundred and twenty-six, leaving as his sole heirs his son William H. Cozens, born in the year eighteen hundred and nineteen, and his daughter Mary H. Cozens, born in the year eighteen hundred and twenty-six, and that the defendant, Peter Lindell (now deceased), or those under whom he claims, did not take possession of any part of the lot in controversy before the twentieth day of July, (1826) eighteen hundred and twenty-six, then the plaintiffs are not barred in this case, and have not lost their title by the operation of the statute of limitations.

4. The jury are instructed that the United States survey No. 3,340, given in evidence by the plaintiffs, is evidence of the location, extent and boundaries of the lot which was confirmed by the act of Congress of the 4th of July, 1836, to Guillaume Bizet's legal representatives; and if the jury believe, from the evidence, that the same lot came into the possession of John Baptiste Provenchere, and was claimed or cultivated or possessed by him for himself, an inhabitant of the town or village of St. Louis, as a common-field lot adjoining or belonging to said town or village, as the last claimant or cultivator thereof prior to the twentieth day of December, (1803) eighteen hundred and three, then the said survey is also evidence of the location, extent and boundaries of the lot so claimed and cultivated by him as aforesaid.

Defendants asked the following instructions, which were refused, and defendants excepted:

1. The jury are instructed that the several United States surveys, as marked and defined on the map of Mosberger, given in evidence before the jury, are evidence of a very high character of the true location of the several common-field lots confirmed to the persons named in said map of surveys, and said surveys by the United States are so conclusive of

the true location and boundaries of the lots so surveyed that they control all other calls, whether proved by recitals in deeds, or by parol testimony of witnesses ; and if the jury find from the evidence that the United States survey for William Bizet's legal representatives, No. 3,340, calls for a boundary on the north by the United States survey for Bacanné, and for Vincent Bouis under Pierre Chouteau, which Bouis survey included Bacanné, and that the survey No. 3,340 for William Bizet's legal representatives is for the same lot cultivated by John B. Provenchere before 1803, and that the deed of 1816 to Risdon H. Price calls for boundaries by the lot of Joseph Lacroix and of Simoneau, and that the plaintiffs have not proved to the satisfaction of the jury that the lot of Joseph Lacroix or of Simoneau are the boundaries on either side of said survey No. 3,340 for William Bizet's lot in 1816, then the plaintiffs cannot recover in this action, and the jury will find for the defendants.

2. If the jury find from the evidence that the location of the lot of land, according to the boundaries given in the deed from Marie Provenchere and John Louis Provenchere to Risdon H. Price, of 1816, will not cover or include the lot of land sued for, then the jury will find for the defendants.

3. If the jury find from the evidence that they are unable to ascertain the true and specific location of the land described in the deed from Marie Provenchere and John Louis Provenchere to Risdon H. Price, of 1816, by the boundaries given in said deed, then the jury will find a verdict for the defendants.

4. In order for the plaintiffs to recover the lot sued for, it is necessary for them to have proved to the satisfaction of the jury that the deed from Marie Provenchere and John L. Provenchere to Risdon H. Price, of 1816, does describe by its boundaries the same lot of land sued for, as it was known in 1816, and that the deed of Marie Provenchere and John L. Provenchere to Phillipson and Labadie, of 1816, does not describe by its boundaries the lot of land sued for, as it was

known in 1816, and does not include the one by forty arpents sued for in the two by forty arpents described in the deed.

5. If the particulars of description and the calls for boundaries in the deed of Marie Provenchere and John L. Provenchere to Risdon H. Price, of 1816, do not agree with the particulars of description of the lot of land sued for, as it existed and was known and bounded in 1816, then the jury will find for the defendants. The burden of proof is on the plaintiffs to show, by evidence satisfactory to the jury, that the description in the deed of 1816 from Marie Provenchere and son Louis to Risdon H. Price, with its calls for boundaries, covers and conveys the lot of land sued for, as it existed and was known in 1816; and if the jury entertain reasonable doubt as to the location of said lot of land under the boundaries of said deed of 1816 from Provenchere and son Louis to Price, then the jury will find for the defendants.

6. If the jury find from the evidence that the deed of Marie Provenchere and John Louis Provenchere, of 1816, to Phillipson and Labadie contains a description of boundaries that may be applied to the lot sued for, and that the deed of same grantors to Risdon H. Price contains a description of boundaries that are not as applicable to the lot sued for as the deed to Phillipson and Labadie, then the plaintiffs cannot recover.

7. The boundaries called for in a deed overrule and control other and more indefinite calls; and if the defendants have proved to the jury that the lot of Alexis Marie was north of a road separating it from the lot cultivated by Provenchere, and if the plaintiffs have not proved to the satisfaction of the jury that any lot cultivated by Provenchere was bounded by Lacroix or by Simoneau, then the plaintiffs cannot recover.

8. If the jury find, from the evidence, that in the deed of Marie Provenchere and John Louis Provenchere to Risdon H. Price, of the year 1816, the lot described is one by forty arpents of land, bounded on one side by Joseph Lacroix and on the other side by Simoneau, and if the jury are not satis-

fied by the evidence that the lot now sued for was bounded by Lacroix and Simoneau in 1816, or by either Lacroix or Simoneau in 1816, then the jury will find for the defendants.

9. Unless the plaintiffs have proved to the satisfaction of the jury that the land sued for and described in the survey for William Bizet's representatives is the same lot of land described in the deed from Marie Provenchere and John L. Provenchere to Risdon H. Price, of 29th of July, 1816, and that the said lot of land described in said deed can be located by the descriptive calls for boundaries, so as to cover the lot of land sued for in this action, then the jury will find for the defendants.

10. If the boundaries called for in the deed from Marie Provenchere and John Louis Provenchere to Risdon H. Price described another or different lot of land from the lot of land sued for in this action, and that if the plaintiffs has not proved to the satisfaction of this jury that the boundaries called for in this deed of Provenchere and Provenchere to Price, of 1816, do not describe or cover in terms, by its boundaries, the lot of land now sued for, then the jury will find for the defendants.

11. If the jury find from the evidence that the deed of Marie Provenchere and John Louis Provenchere to Phillipson and Labadie, of 1816, includes the lot sued for, and the jury find that the deed from the same grantors to Risdon H. Price, of 1816, is for another and different lot than the lot conveyed and described in the deed to Phillipson and Labadie, then the jury are directed to disregard the said deed to said Price in examining the case.

12. If the defendants and Peter Lindell, under whom they claim, have prior to the commencement of this suit had twenty years' actual, adverse and continuous possession of the premises sued for, claiming title to the same, then the jury are warranted in presuming conveyance of said premises from the legal representatives of William Bizet to said defendants or their ancestors.

13. If the jury believe from the evidence that Peter Lin-

dell had, prior to the commencement of this suit, twenty years' actual, adverse and continuous possession of the premises sued for, claiming title to the same, then the jury are warranted in presuming conveyance from the legal representatives of John B. Provenchere to the said Lindell, or those under whom he claims, if the said John B. Provenchere cultivated and possessed said premises prior to the twentieth of December, 1803, claiming title to the same.

14. The deed of Marie Papin, widow of J. B. Provenchere, and of John Louis Provenchere, to Phillipson and Labadie, read in evidence by the defendants, dated July 25, 1816, and recorded July 29, 1816, purports to convey a tract of land of two arpents in front by forty in depth, situated in the Grand Prairie, and bounded on the north by a road of thirty-six feet, which separates it from the lot which Pierre Chouteau acquired from Alexis Marie, and on the south by a proprietor unknown, and which had been cultivated for a number of years by John Baptiste Provenchere, deceased. If, therefore, the jury believe from the evidence that the lot of $2 \times 40$ arpents confirmed to Vincent Bouis' legal representatives, and surveyed as United States survey 1,813, under Pierre Chouteau, was the same lot acquired by said P. Chouteau of Alexis Marie, then the lot conveyed by said deed of J. L. Provenchere to Phillipson and Labadie was bounded on the north by said survey No. 1,813, and will include the premises sued for, to-wit, survey No. 3,340, if said survey 3,340 is bounded on the north by survey No. 1,813.

The defendants asked the following instructions, which were given:

15. If the jury find from the evidence that the deed of Marie Provenchere, widow, and John Louis Provenchere, of the 25th of July, 1816, to Phillipson and Labadie, was duly made and executed and recorded in 1816, and that said Marie was the widow and said John Louis was the son of John B. Provenchere, and that said deed to Phillipson and Labadie covers by its boundaries the land sued for, then said

deed conveys to said Phillipson and Labadie a better title than was conveyed to Price by the same grantors, Marie and John L. Provenchere, by the deed of the 29th of July, 1816, to Risdon H. Price, recorded in 1847, and so far as the plaintiffs claim any title under the deed to Price they cannot recover.

16. The deed from John B. Provenchere and Marie Provenchere to Risdon H. Price, dated July 29, 1816, read in evidence by the plaintiffs, calls for a tract of land of $1 \times 40$ arpents bounded north by Joseph Lacroix, as it is said, and south by land cultivated formerly and said to belong to one Simoneau, and which John B. Provenchere cultivated in his lifetime prior to 1803.

17. The burden of proof is on the plaintiffs to prove to the jury that the land thus described in said deed is the same tract of land confirmed to W. Bizet or his legal representatives, and surveyed as U. S. survey No. 3,340; and unless plaintiffs have made such proof to the satisfaction of the jury, they will find for the defendants.

18. The deed from John L. Provenchere and Marie Provenchere to Phillipson and Labadie, dated July 25, 1816, and recorded July 29, 1816, calls for a tract of land of $2 \times 40$ arpents in the Grand Prairie, bounded north by a road which separates said tract of land which Pierre Chouteau had acquired of Alexis Marie, and which had also been cultivated for a number of years by John B. Provenchere. If, therefore, the jury believe from the evidence that the lot described in said deed of July 25, 1865, includes the land surveyed as survey No. 3,340, in the name of William Bizet's legal representatives, then the plaintiffs cannot in this action recover any portion of said land under the deed of said J. L. and Marie Provenchere to R. H. Price offered in evidence by the plaintiffs.

19. The deed of John Louis Provenchere and Marie Provenchere to Phillipson and Labadie, read in evidence by defendants, contains covenants of warranty against themselves, their heirs and assigns, and the heirs of J. B. Provenchere;

and if the jury believe from the evidence that said deed includes the premises sued for, then the title to said premises subsequently acquired by said John Louis Provenchere by virtue of the deeds from Paul Bizet and John B. Boissy, read in evidence by the plaintiffs, immediately vested in the said Phillipson and Labadie by virtue of the covenants in said deeds of John Louis Provenchere to them.

20. If the jury find from the evidence that the land sued for was used and cultivated by John B. Provenchere for several years before the 20th day of December, 1803, as one of the common fields of the Grand Prairie of the town of St. Louis; that said Provenchere was the last cultivator of said lot, and was during said time a resident of the town of St. Louis; that John Louis Provenchere was the son of said John B. Provenchere by Marie Papin, and one of his heirs,— then the act of Congress of June 13, 1812, vested a title in said common-field lot of the Grand Prairie in said John B. Provenchere, and upon his death in his legal representatives; and if the deed of Marie Provenchere and John Louis Provenchere, of the 25th day of July, 1816, to Phillipson and Labadie, côvers by its descriptive boundaries the land sued for, then the said deed conveyed to Phillipson and Labadie a better title than was conveyed to Price by the deed of the 29th day of July, 1816, and a better title than was conveyed by the deed of John Louis Provenchere to Robert Forsyth on the 15th day of January, 1838, and the plaintiffs cannot recover in this action.

21. If the jury believe from the evidence that Peter Lindell, claiming under John O'Fallon, entered into possession of the New Madrid location for James Conway, or of a part thereof under claim for the whole, and held possession of the same, and that such possession was open, notorious, adverse and continuous for more than twenty years prior to the commencement of this suit, then the said Lindell, and those under whom he claims, acquired title by the statute of limitations; and the plaintiffs claiming under Horatio Cozens cannot avoid the effect of the statute if said Lindell, and those under

Schultz v. Lindell's Heirs.

whom he claims, entered into possession at the death of said Horatio Cozens, and held possession as above stated.

22. The jury are instructed that part of the premises sued for, to wit, so much of survey No. 3,340 as lies within the New Madrid location of Joseph Hunot, as surveyed as United States survey No. 2,500, are claimed by defendants under title through said Hunot's representatives. If, therefore, the jury believe from the evidence that Peter Lindell, and those under whom he claims, have had open, notorious and adverse possession of so much of said New Madrid location for Joseph Hunot as includes such part of survey No. 3,340 above described, claiming title to the same for more than twenty years prior to the commencement of this suit, then the defendants are protected by the statute of limitations, and the plaintiffs, although claiming through Horatio Cozens, cannot avoid the effect of the statute if said Lindell, and those under whom he claims title, were in possession of said portion of said survey No. 2,500 prior to the death of said Cozens, claiming under deeds which included that portion of survey 3,340 embraced by survey No. 2,500.

23. So far as any portion of the land confirmed by the act of Congress of the 4th of July, 1836, to William Bizet's legal representatives is covered by the United States survey of the sixteenth section, in township forty-five north of range seven east of the principal meridian, the grant of 1820 of such sixteenth section for the use of Schools is a better title than said confirmation of 1836 to Bizet, and the plaintiffs cannot recover any part of said sixteenth section under said confirmation to Bizet.

24. If the jury find from the evidence that the land sued for was cultivated and used by John B. Provenchere for himself for several years before the 20th day of December, 1803, as one of the common-field lots of the Grand Prairie of the town of St. Louis, that said Provenchere was the last cultivator of said lot, and was during said time a resident of the town of St. Louis, and that said John Louis Proaenchere was the son of said John B. Provenchere, then the act of Congress

of June 13, 1812, vested a title in said common-field lot of the Grand Prairie in said John B. Provenchere and his legal representatives, his widow and his children, and the confirmation of July 4, 1836, does not vest any title in the heirs of William Bizet to any portion of the said Grand Prairie common-field lot, so used and possessed by John B. Provenchere for himself, prior to the 20th day of December, 1803; and so far as the plaintiffs claim any title under the heirs of William Bizet, for the premises so possessed by John B. Provenchere before 1803, such title cannot prevail in this action.

The court refused the above instructions numbered from one to fourteen, and gave those numbered from fifteen to twenty-four, to which refusal defendants excepted.

The jury found a verdict for plaintiffs for an undivided half of the land, thus establishing the title of J. B. Provenchere by virtue of his cultivation and possession prior to December, 1803, as under the Bizet title he was only entitled to six fifteenths.

The defendants filed their motion for a new trial, which was overruled, exceptions taken, and case appealed.

*Whittelsey*, and *B. A. Hill*, for appellant.

I. The court erred in leaving to the jury a question of law. If the deed of the Provencheres to Phillipson and Labadie described the *locus in quo*, the plaintiffs were not entitled to recover; so also if the deed of Provencheres to Price by its terms did not describe the *locus in quo*, the plaintiffs could not recover.

What are the boundaries of a tract of land described in a deed, and what is the location of land as described, is a matter of law for the court; where those boundaries are as a matter of fact, is a question for the jury—Whittelsey v. Kellogg, 28 Mo. 404; Doe v. Paine, 4 Hawks, 64; Doe d. Morgan v. Hurley, 1 Dev. & B. 425; Cockrill v. McQuin, 4 Mon. 61; Evans v. Green, 21 Mo. 170; Ott v. Soulard, 9 Mo. 581.

The only descriptive call in the deed to Price which applied to the *locus in quo*, is the call for the lot cultivated by

J. B. Provenchere prior to 1803; and that call is also used to Phillipson, "which lot belongs to us as having been culti- vated for many years by the said J. B. Provenchere, lately deceased, of whom we are the heirs." There being no evi- dence before the jury of the cultivation of any other lot in the Grand Prairie by J. B. Provenchere, upon that call alone the deed to Phillipson and Labadie (being of prior date) car- ried the title, and showed a better outstanding title not vest- ed in the plaintiffs.

As the issue between the parties was, what tract of land was described in the deeds to Price and Phillipson and Laba- die, the 1st and 2d instructions given for the plaintiffs were erroneous in leaving the question of law to the jury.

II. The court erred by declaring, as it did by the 4th in- struction given for the plaintiffs, that the U. S. survey No. 3,340 of the confirmation to Bizet was evidence of the loca- tion, extent and boundaries of the lot claimed and cultivated by J. B. Provenchere. J. B. Provenchere did not claim un- der Bizet but adversely to him, as appears by the 1st instruc- tion; consequently, it was not the same claim confirmed by two different acts of Congress, as in the case of City of St. Louis v. Toney, 21 Mo. 243; but the claims were adverse, and the survey of the Bizet claim did not give location to the claim of J. B. Provenchere under the act of June 13, 1812.

III. The court should have given the 14th instruction asked by defendants. It asked the court, as a matter of law, to instruct the jury how the calls in the deed of Provenchere to Phillipson and Labadie should be applied so as to give lo- cation to the tract described in the deed.

By making the Bouis survey (No. 1,813) the northern boundary of the 2×40 sold to Phillipson and Labadie, every call in the deed is satisfied—boundary, Spanish road, and cultivation and quantity—as appeared from the evidence. To make survey 3,297 the northern boundary satisfied one call, but entirely rejected the other two—the old road sepa- rating the lots, and the cultivation; for there is no evidence

that J. B. Provenchere ever cultivated surveys 3,298 and 3,297, nor did the plaintiffs claim that he did. They offered in evidence papers to show that a mortgage upon Sur. 1,589 by Bizet had been satisfied by J. B. Provenchere, who married Bizet's widow; but Sur. 1,589 satisfies no call whatever in the deed, neither boundary, road, cultivation, nor ownership.

There was really no ambiguity created in the deed, by showing that Chouteau had purchased two lots from Marie in the Grand Prairie, and each of 2×40 arpents; for the northern lot of Marie would not satisfy the call of right to convey, of cultivation, nor of the read separating the lots. All the title papers of the Bouis lot (sur. 1,813) call for J. B. Provenchere as their southern boundary in 1806, 1818, and 1825—2 Phil. Ev. (ed. 1859) p. 782, note 520, &c.; 1 Greenl Ev. § 301, p. 369, n. 2.

IV. The disability of William H. Cozens, heir of Horatio Cozens, terminated in 1840, and he had but ten years longer in which to sue, if the adverse possession had continued twenty years (R. C. 1835 & 1845), so that the claim through him would be barred. The plaintiffs claim adversely to the heirs of Horatio Cozens, and cannot set up the disabilities of the heir to avoid the bar of the statute.

V. All the instructions given for the plaintiffs were erroneous, for the reason that J. B. Provenchere's possession was under the Bizet title and not adverse. The title was in C. Bizet; by marriage contract his widow took a life estate. When J. B. Provenchere married the widow Bizet and took possession, it was for his wife's life as as widow of Bizet. When she died, the possession of J. B. Provenchere and Marie Bizet enured to the benefit of the children of the first marriage of said Marie, and the title under the act of 1812 would enure to them; and as they are barred by prescription in Lindell, he holds their title, which is the better title under the act of 1812. There was no evidence of any claim of J. B. Provenchere adverse to that of his step-children.

*R. M. Field*, and *C. H. Chapin*, for respondents.

I. As to the construction of the deed.

The 1st instruction offered by the defendants, and refused by the court, declares, that if the plaintiffs have not proved that the lot in dispute was bounded by Lacroix and Simoneau, then they cannot recover. It is an essential requisite of every grant, that it should contain such a description that the subject of the grant may be known; but no particular form is enjoined. However inconsistent and incoherent may be the parts of the description, if, on the whole, the subject of the grant can be fairly ascertained by the triers, they must give the same effect to the grant as if its parts were adjusted with the nicest accuracy. It follows that when the real subject of the grant is acertained, the repugnant calls are rejected as false or mistaken.

One of the earliest cases on this subject is Wrotesly v. Adams, Plowd. 191, in which there was a grant of the farm ·Bronley, in the tenure of Wilcox, which was not true. The judges held that the word "farm" imported sufficient certainty, and the farther description being false, had no effect. —Windham v. Windham, 3 Dyer, 376. In early times, the distinction prevailed between *denomination* or name and *demonstration* or description, the former being regarded as the more worthy; but it is obvious that a name is nothing but a compendious description, and the true reason why it was preferred was, that, being concise and simple, it involved fewer chances of mistake than a complicated and detailed description.—Blaque v. Gold, Cro. Car. 447, 473.

Broome lays down the following rule as the result of the English cases: "Where there is an adequate and sufficient description, with convenient certainty of what is intended to pass by the particular instrument, any subsequent erroneous addition will not vitiate it"—Broome's Max. 269; Worthington v. Hillyer, 4 Mass. 196; Seaman v. Hogeboom, 21 Barb. 398; Abbot v. Pike, 33 Me. 204; Harvey v. Mitchell, 30 N. H. 575; Smith v. Cheatham, 14 Texas, 322; Sawyer v. Kendall, 10 Cush. 241; Jackson v. Marsh, 6 Cow. 281; Bates v.

23—VOL. XL.

Bower, 17 Mo. 550 ; Boardman v. Ford, 6 Pet. 345 ; Stringer v. Young, 3 Pet. 320.

The following cases are to the same effect : Parks v. Loomis, 6 Gray, 467 ; Peaslee v. McGee, 19 N. H. 273 ; Ricker v. Barry, 34 Me. 116 ; Bosworth v. Sturtevant, 2 Cush. 392 ; Vose v. Bradstreet, 27 Me. 156 ; Hall v. Gittings, 2 H. & J. 112 ; Jackson v. Clark, 7 Johns. 217 ; Lyman v. Loomis, 5 N. H. 408; Ela v. Corel, 2 N. H. 175 ; Jackson v. Root, 18 Johns. 60; Ives v. Kimball, 1 Mich. 308; Proctor v. Pool, 4 Dev. 370 ; 4 Greenl. Crui. 335, in note; Gibson v. Bogy, 28 Mo. 480.

By reference to the description in the deed in the present case, which is the plaintiffs' principal title paper, it will be seen that it contains five particulars : 1. Quantity, one by forty arpents ; 2. Situation, in the Big Prairie ; 3. Distance from St. Louis, 3½ miles ; 4. Cultivation, by J. B. Provenchere many years before 1803 ; 5. Boundaries, on the north by Lacroix, south by Simoneau, as is said. It is not pre-· tended that any of these particulars are wanting to the lot in dispute, except the last.

II. Cozens, being the proprietor of the land in dispute, died in July, 1826, leaving two infant children, the elder born in 1819. An entry and adverse holding after the death of Cozens, and during the minority of his children, would fall within the saving of the statute of 1825, which gives to the infant twenty years after attaining full age in which to commence suit. The administrator's deed to the purchaser transmitted the estate just as it existed in the hands of the heirs.

FAGG, Judge, delivered the opinion of the court.

Upon the record of the case, as presented by the appeal from the St. Louis Court of Common Pleas to this court, we find but two points upon which it would seem to be necessary that any opinion should be given ; both of these points relate to the direction of the jury as to the law applicable to the facts shown by the testimony.

This was an action of ejectment, commenced in the St. Louis Land Court and removed by change of venue to the Court of Common Pleas, to recover a lot of one by forty arpents of land conceded to William Bizet on the 7th day of February, 1769, and confirmed to his legal representatives by act of Congress of the 4th of July, 1836. Plaintiffs, for a more perfect description of the premises sued for, allege that this was "the same tract of land which was cultivated and possessed by Jean Baptiste Provenchere prior to the 20th day of December, 1803, as a common-field lot of the Grand Prairie common fields adjoining and belonging to the town of St. Louis, and conveyed by Marie Provenchere, widow of Jean B. Provenchere, deceased, and Jean Louis Provenchere, to Risdon H. Price by deed of the 29th day of July, 1816."

It appears that William Bizet died in 1772, leaving a will by which all of his estate was devised to his brother, Charles Bizet. The latter in 1774 married Marie Papin, and died in 1780 leaving the said Marie his widow and three children, Paul, Antoine, and Marie Bizette. In 1781, Marie Bizet, widow of the said Charles, married Jean Baptiste Provenchere. It is not shown at what exact period of time the said J. B. Provenchere took possession of the land in controversy, but there was testimony introduced by the plaintiffs to prove that he had the actual possession of it and cultivated the same for many years before the 20th day of December, 1803, and that he continued in the possession of the same claiming it as his down to the period of his death in the year 1814. This fact indeed seems not to have been controverted upon the trial. On the contrary, the only paper title shown by the defendants to this property was derived from J. B. Provenchere, with the exception perhaps of the interest of Antoine Bizet in the estate of his father, Charles Bizet, deceased, conveyed to Peter Lindell by deed dated in the year 1849. Plaintiffs, on the trial, presented a chain of title under Bizet to a portion of this land, amounting together to six fifteenths of the whole; but this title seems to have been

entirely abandoned in the theory of the case as presented by the instructions given at their instance. Their chain of title under J. B. Provenchere consisted of, 1st, a deed from Marie Provenchere, widow, and Jean Louis Provenchere, son of the said Jean Baptiste, to Risdon H. Price, dated July 29, 1816, acknowledged two days afterwards, but not recorded until May 17, 1847. The following is the description of the property conveyed by this deed: " All the right, title, claim, interest, property and estate which we have had or possessed of, in and to a certain tract or parcel of land situate, lying and being at the place commonly known by the name of Big Prairie, about three and a half miles west of St. Louis, and containing one arpent in front by forty arpents in depth, bounded north by land now belonging to Joseph Lacroix, *as it is said,* and south by land cultivated formerly and *said to belong* to one Simoneau, *it being the same tract or parcel of land which the said John Bte. Provenchere in his lifetime cultivated for many consecutive years prior to eighteen hundred and three.*" 2d. A deed from Risdon H. Price to Horatio Cozens, dated May 11, 1825, but not acknowledged or recorded until August, 1846.

Cozens died in 1826, and his administrators, under an order of sale of the Probate Court of St. Louis county made in September, 1847, sold and conveyed the property in question to Fred. Jenkins by deed dated April 25, 1848. Horatio Cozens left a widow and one child, William H. Cozens, who was born September 5, 1819; he had also other issue, a daughter, born in September, 1826, three months after her father's death. Jenkins conveyed to plaintiffs by deed dated September 26, 1853. This suit was commenced in September, 1855. The defence was simply a denial of the plaintiffs' title and a plea of the statute of limitations. It was not pretended under this chain of title that plaintiffs were entitled to more than one undivided one half of said property, as the said J. B. Provenchere left two children, Jean Louis and Margaret. There seems to be no controversy about the fact

that the entire estate of J. B. Provenchere passed in equal portions to these two children, and plaintiffs were therefore only entitled to the interest of Jean Louis.

The defendants relied, first, upon a deed from Marie Provenchere dated July 25, 1816—just four days previous to the deed from the same parties to Risdon H. Price, and upon which plaintiffs' claim to this property is really founded—recorded July 29, 1816, by which the said parties conveyed all of their right and title to a tract of land described as follows: "situated about three miles and a half in the western part from the town of St. Louis at the place commonly denominated ' Grande Prairie,' which land contains *two arpents in front by forty in depth, and is bounded on the north side by a road thirty-six feet broad, which separates it from the land which Pierre Chouteau bought of Alexis Marie, and on the south side by a land of an owner unknown, on the east and west by vacant lands; which land belongs to us as having been cultivated during a number of years by the said Jean Baptiste Provenchere, deceased, and whose heirs we are,"* &c. This title was acquired by Lindell after the commencement of the suit by plaintiffs. There were shown to be several interferences with the survey of the lot in question, viz., the New Madrid location No. 161 of Joseph Hunot, the New Madrid location of James Conway, and the confirmation of widow Camp (the title to all of which has been acquired by Lindell), and also the sixteenth section; so that, upon the theory that the deed to Phillipson and Labadie of 1816 was intended to pass the title to the lot in question, the claim of defendants was older in point of time, and covered the only interest in the premises to which the plaintiffs could allege any claim whatever. So far as this point is concerned, then, it was not a question of title, but one that related exclusively to the identity of the property intended to be conveyed.

If this question was fairly presented to the jury by the instructions of the court below, the finding ought not to be disturbed. The instructions given on behalf of plaintiffs assumed correctly, as we think, that the confirmation to

Provenchere of the lot sued for, under the act of June 13, 1812, superseded any title which might have been claimed under the concession of 1769 to William Bizet, and the confirmation to his legal representatives under the act of July 4, 1836; the latter confirmation and survey No. 3,340 serving no other purpose than as links in the chain of evidence to fix the location of the tract which J. B. Provenchere had cultivated prior to December 20, 1803. So vague and indefinite are the calls in the deed to Price, that many collateral facts and circumstances were introduced for the purpose of throwing additional light upon this question of identity, but we do not feel called upon to examine them. We confine ourselves strictly to the point of objection made by the appellants.

There was no such call for the lines of adjoining proprietors as would justify the court in saying to the jury that established lines were called for, and that the grant to plaintiffs must be adjusted to these lines; and if they could not be found by the testimony, the land sued for was not the land intended to be conveyed by the deed to Price. The descriptions in the two deeds of Marie and Jean Louis Provenchere to Price and to Phillipson and Labadie were in many respects similar. In both the land is said to be situate in the Grand Prairie, about three and one half miles west from St. Louis. The deed to Price conveyed a lot of "*one by forty arpents*," and being the same cultivated by Provenchere "*for many consecutive years prior to* 1803"; the deed to Phillipson and Labadie conveyed a lot of "*two by forty arpents*," claimed to belong to the grantors by reason of the fact that the same had "*been cultivated for many years by the said John B. Provenchere, deceased.*" The testimony showed that the lot sued for answered the description as to quantity, and although that should not ordinarily be taken as a part of the description, yet there are many cases in which it must be so taken. Here were no natural or artificial monuments referred to, no courses and distances, and no established lines of known proprietors; but it is a lot of certain dimensions,

situated in a certain locality, containing many lots of different sizes, and designated as the one cultivated for many years prior to a fixed period of time and by a certain individual. These were all parts of a description that must necessarily be taken into consideration in settling the question of identity, and the court permitted them to go to the jury without telling them that any one of these parts controlled the location. The lot claimed by defendants was just double the size of the one sued for in cultivation for "many years," it is true, by the same individual, but not at any fixed period of time. The whole question of identity was, we think, fairly presented by the instructions, and we are not disposed to disturb the verdict on that account.

It cannot be said of the calls in either one of these deeds, that they were intended to apply to a particular tract of land, the boundary lines of which were so fixed and established as to be absolutely certain in their character, or that they could be definitely determined from anything that was referred to as fixed and established. At all events, in attempting to settle the intentions of the parties to the deed of Marie and Jean Louis Provenchere to Price, we think the directions of the court to the jury placed the whole matter in a light most favorable to the defendants, and they really have no ground of complaint. The rule seems to be pretty well settled by the authorities, that where a particular tract of land cannot be located by the calls for monuments, or for course and distance, "the intent of the parties is not to fail if there be other matter in the instrument indicative and certain of such intent"—Seaman v. Hogeboom, 21 Barb. (S. C.) 398, and the cases there cited.

The only remaining question to be considered is the plea of the statute of limitations. The testimony shows that Horatio Cozens (the person to whom Price conveyed) died in July, 1826, and that two minor children survived him—the eldest born in 1819, and the youngest three months after his death. By the act approved February 21, 1825 (R. C. 1825, p. 510), real or possessory actions were limited to

twenty years after the right of action accrued, saving to infants, femmes coverts, &c., after the removal of their disabilties. The right and title acquired by the heirs-at-law of Cozens was not extinguished until the year 1848, when his administrators conveyed to Jenkins, and the estate passed to him with all the rights that attached to it in the hands of the heirs. The proof was that the actual possession of this tract by Lindell commenced after the death of Horatio Cozens, and the eldest child would not have been barred before the year 1860. The possession of Lindell, so far as it related to this identical tract, was without even color of title down to the year 1849.* The question of the identity of the lot having been determined in favor of the plaintiffs, it excludes the idea that this was the property intended to be conveyed by Marie and Jean Louis Provenchere to Phillipson and Labadie. The defendants, therefore, have no right to complain that the deed of the same parties to Price, and upon which rests the claim of plaintiffs, was not recorded until the year 1847.

The judgment of the Court of Common Pleas is affirmed. Judge Wagner concurs; Judge Holmes not sitting, having been of counsel.

* Lindell had been in possession from the year 1828, claiming title under the New Madrid locations of Hunot and Conway, which covered the premises sued for. (See statement.)—Rep.